PARAGON SILK COMPANY, Respondent, *v.* JULIUS G. KUGELMAN and MAX YANKAUER, Copartners, Trading as KUGELMAN, FRANKLAND & FOREMAN, Appellants.

First Department, December 3, 1920.

Sales — action to recover price of goods — purchase by consignor in name of factor — waiver of requirement that purchase be confirmed in writing by factor — authority of defendant's agent to waive confirmation.

In an action to recover the price of goods contracted for by the defendants' consignor for whom they were acting as factors under an agreement which provided among other things that all purchases made by the consignor in the name of the factors were subject to the written and signed confirmation of the factors, it appeared that there was no provision of the contract precluding the consignor from purchasing on his own account and that there was no written and signed confirmation by the defendants of the order for the goods in question.

On all the evidence, *held*, that the factors waived the provision of the contract requiring a signed confirmation of all purchases made in their name and were estopped from claiming the benefit thereof.

The defendants authorized their credit man to consent that the goods be charged to them without a written confirmation, or at least they held him out to the plaintiff as possessing such authority by ratifying former like transactions.

APPEAL by the defendants, Julius G. Kugelman and another, copartners, etc., from a determination of the Appellate Term of the Supreme Court, made on the 6th day of November, 1919, and entered in the office of the clerk of the county of New York,

affirming a judgment of the Municipal Court of the City of New York, borough of Manhattan, ninth district, in favor of the plaintiff.

*Samuel J. Rawak,* for the appellants.

*Benjamin G. Paskus* [*John E. Tracy* with him on the brief], *Rose & Paskus,* attorneys, for the respondent.

LAUGHLIN, J.:

The recovery was for the contract price of goods alleged to have been sold and delivered by the plaintiff to the defendants on the 2d day of April, 1917. The contract was negotiated with the plaintiff by one Abe Levin, who was doing business under the name of the Imperial Silk Company, as the purchaser. Levin was thus engaged in buying and selling silk goods and his place of business was on the sixteenth floor of the building at No. 354 Fourth avenue. The defendants were conducting business on the eleventh floor of the same building as factors under the firm name of Kugelman, Frankland & Foreman, representing various dealers in silk goods, and, among others, Abe Levin with whom they had a contract in writing dated the 17th of March, 1917, in and by which they were designated as factors and he was designated as the consignor. That agreement was considered and construed by this court in *Eiseman & Co., Inc.,* v. *Kugelman* (188 App. Div. 718). It was provided thereby, so far as material to this appeal, that Levin constituted the defendants his sole factors and selling agents and agreed to consign to them and to sell and deliver through them all goods, wares and merchandise which he owned or might purchase or acquire, or the sale of which he might control; that the sales of merchandise consigned to the defendants should be made in their name as factors and on their behalf and that no sale should be made unless approved by the factors and checked by their credit clerk in regard to the credit risk and standing of the proposed purchaser, and the contracts of sale were to provide that the goods were sold by or for the account of the factors and that the purchase price was payable only to them, and the goods and invoices sent to purchasers were to be in the name of the factors and in form

satisfactory to them, and the title to the accounts should be duly confirmed in them by assignment at any time on their demand, and that they were to collect and receive the purchase price of the goods and exercise all the rights and remedies of a seller, subject only to their obligation as factors to account to the consignor for the proceeds of the sales; that the factors guaranteed the accounts on sales approved and checked by them as to credit risk and standing of the purchaser; that the factors were to discount sales and make advances to the consignor and to loan and advance to him on the merchandise consigned to them within ten days after request therefor an amount not exceeding sixty-six and two-thirds per cent of the net invoice value of the goods so consigned or of the cash market value if it were less than the net invoice value, not exceeding, however, $30,000 in all, unless, in the opinion of the factors, the business warranted it; that the net invoice or market value of the merchandise to be purchased by the consignor " in the name of the factors subject to the terms and provisions of this contract " was not to exceed $50,000, " which amount it is agreed to be the maximum limit of the total of stock on hand and purchases of the consignor in the name of the factors; " but it was optional with the factors to increase the amount should the business warrant it. It thus plainly appears that it was agreed that the consignor was to be at liberty to make purchases in the name of the factors, and have the goods consigned to them, and they not only limited the amount of goods which the consignor was to be at liberty to purchase in their name, but it was also expressly provided in the contract that all purchases made by the consignor in the name of the factors were subject to the written and signed confirmation of the factors and that the factors should have a general lien upon all of the consigned goods as security for advances made and agreed to be made, whether within or in excess of the amounts which they were obligated to advance, and for the commissions and expenses to which they were entitled under the agreement and for all indebtedness and liability of the consignor to them, and were to furnish the consignor reasonable selling facilities, room for display and storeroom for his merchandise, which was to be sold at their

place of business, and were to bear the expenses of packing, billing and shipping the merchandise sold by the consignor, and to deliver and forward the same to his customers, and the factors were to insure the goods against fire and burglary, and such insurance was to be paid to them as " their interest may appear," and they were to guarantee the accounts of sales approved by them and to receive specified commissions therefor.

There was no express provision of the contract precluding purchases by the consignor in his own name without the written and signed confirmation of the factors and it is to be inferred from the evidence that it was not so intended, for the evidence shows that all orders did not require the written confirmation of the defendants.

The trial was without a jury and there are no express findings of fact. There was no written confirmation by the defendants of the order for the purchase of the goods in question by Levin in the name of the defendants; but he did so purchase them. The respondent contends that the recovery rests on an implied finding warranted by the evidence, that, notwithstanding the fact that the plaintiff knew that Levin was the purchaser, upon its refusal to give him further credit the defendants verbally consented that the goods might be charged to them and delivered to them for Levin and that they would pay therefor, and although this agreement by the defendants was verbal and, therefore, not in conformity with the provisions of their contract with Levin with respect to purchases to be made in their name, still, that there had been a course of business by prior dealings between the parties by which the defendants were estopped from contesting their liability on the ground that they did not confirm the purchase in writing. The learned counsel for the appellants contends that the plaintiff's inability to show a written confirmation of the purchase by the defendants prevents a recovery and he relies for authority therefor on *Eiseman & Co., Inc., v. Kugelman (supra)*; *Talsky* v. *Wolf* (188 App. Div. 725), and *Cohen* v. *Siegel, Cooper & Co., Inc.* (172 id. 21). On the other hand, the learned counsel for the respondent insists that the facts of this case do not bring it within those authorities and that the factors notwithstanding that they did not confirm the

purchase in writing are liable on the ground that they waived that provision and are estopped from claiming the benefit thereof. The evidence shows that on the 2d day of April, 1917, two orders, for the purchase of goods from plaintiff for delivery some months later, one for $3,600, and the other for $700, were given by Levin on blanks having, at the head thereof, the name under which the defendants were doing business printed in large type together with their place of business, both of which orders provided that they were to be valid only if countersigned by one of the defendants. Those orders expressly provided that they were placed for the account of the Imperial Silk Company, and neither of them is in question here. It appears that on the same day Levin applied to the plaintiff for the purchase of the bill of goods in question amounting to $472.82, for immediate delivery and negotiated the purchase subject to the approval of the credit by the plaintiff's factor, one Blum, without whose approval the plaintiff had contracted to make no sales. Blum declined to approve a sale granting any further credit to Levin. The evidence on the part of the plaintiff tends to show, and was sufficient to warrant a finding, which is implied and it must be presumed was made, that the plaintiff and its factor thereupon offered to sell and deliver the goods if Levin and the defendants would consent that they might be charged to the defendants and if the defendants would agree to pay therefor; that Levin so consented and called defendants' credit man, Huebshman, on the phone and requested that the defendants consent that the goods be charged to them inasmuch as his credit was exhausted and that Huebshman thereupon so agreed; that Huebshman had prior thereto similarly verbally consented that goods desired by Levin but which the plaintiff would not sell on his credit might be so charged to them and that had been done and they had paid for the goods; that prior to the time the plaintiff billed the goods in question to the defendants, and on the 21st, 22d, 27th and 30th of March, 1917, the plaintiff had five similar transactions with the defendants by which, through Huebshman, it was authorized to charge goods ordered by Levin to the defendants, and did so charge, bill and deliver them without any confirmation of the orders in writing by the defendants and that the defendants paid for

the goods. It appears, however, that in making payment for such goods the defendants presented to the plaintiff with their checks pay statements showing that the payments were made " By the request and for the account of " Levin or Imperial Silk Company. Huebshman, called for the defendants, testified that he had been their credit man since 1912 and also their collection manager but had never purchased or authorized the purchase of goods for them and had no authority so to do and never authorized Levin to purchase for them and did not have the conversations testified to by the witnesses for the plaintiff with respect to charging those or other goods to the defendants and that one of the defendants signs for all orders for goods to be delivered to and charged to them by consignors. The defendants also testified to the effect that Huebshman was not authorized without their written consent to have goods charged to them. These denials by Huebshman of the conversations, and by the defendants with respect to his authority, merely presented a question of fact with respect to his authority or the ratification of his act, and the trial court found in favor of the plaintiff thereon, and in view of the numerous similar prior transactions, was authorized to find and must be presumed to have found that Huebshman was authorized by the defendants to consent that goods be charged to them without the written confirmation of the order by one of them, or that they had held him out to plaintiff as possessing such authority by ratifying the former like transactions by paying for the goods. After these conversations the goods were invoiced as having been sold by Blum, who was factor for the plaintiff, for the account of the plaintiff as follows: " Sold to Kugelman, Frankland & Foreman, Dept., Imperial Silk Co." and *the invoice and the goods* were sent to the defendants on the same day and delivered to and left with their receiving clerk who thereupon gave a receipt for the goods as follows: " New York, Apr. 2 1917. M. Kugelman, Frankland & Foreman, Dept. Imperial Silk Co. 354 4th Ave. RECEIVED from J. A. Blum in good order One package. Received April 2, 1917 Kugelman Frankland & Foreman A /c I. S. Co. By S. Friedman, 1 pkg." The defendants produced the invoice on the trial. There was a sign on the door at the entrance to the place of business of the defendants showing that they were

conducting business as factors and naming the firms for whom they were acting as factors; and there was a sign on the entrance to Levin's place of business showing that the defendants were factors for "Abe Levin, Imperial Silk Company." Evidence was offered in behalf of the defendants tending to show that by the system under which they conducted business when a delivery of merchandise was tendered at their place of business under orders which required confirmation by the defendants the order was submitted to one of the defendants and if signed that the goods were received, and that goods were also received for the account of their principals where they were charged to and to be paid for by their principals, and that in such cases the receiving clerk would call up the principal and ask if he should receive the goods, and if directed to receive them he accepts the goods and sends the goods and the bill to the principal and that goods intended for the Imperial Silk Company even though charged to defendants were received by defendants' receiving clerk if directed by Levin to receive them and taken with the bill to its place of business on the sixteenth floor; that although the defendants had a lien on the goods they had no one there in charge for them and they trusted to the honesty of Levin; that where goods were charged to the defendants, if there was no written confirmation of the order, *it was the invariable custom* that they should not be received, but that notwithstanding that they sometimes were received, and that sometimes the invoices may be in the package and may not be seen by the receiving clerk of the defendants, and that in such cases he merely inquires of the defendants or their principal whether to receive the goods, and that the defendants did not receive the invoice of April second showing that these goods were charged to them *until some days* after that date; that on the 13th day of April, 1917, they wrote the plaintiff's factor asking him to note that no goods intended for the Imperial Silk Company should be charged to them " direct " unless he had, in advance, a confirmation of the order over the signature of one of them and stating that any goods purchased for that account, or any other account, but charged to customers and not to defendants, although to be delivered on their floor of the building, should not be marked in their name, and that they had no " departments "

First Department, December, 1920. [Vol. 194.

and that any purchases which were confirmed by defendants should be marked in their name. " Account of ———." The defendants did not call their receiving clerk or explain his absence and the evidence does not show whether he communicated with the defendants with respect to receiving the goods before he accepted them. . Levin further testified that merchandise received by his company from the plaintiff or its factor was always accompanied by an invoice and that such an invoice accompanied the shipment in question; that the goods were then checked back and the bill turned over to the defendants which was the course followed with respect to the bill for these goods, and that these goods were checked back and entered up in the stock book and he then stamped the bill; that the stamp " consisted of turning over partially a lien on these goods," and that then one of his clerks would take the bill downstairs and deliver it to the defendants on the day it was received or, at least, within one day thereafter. The stamp to which the witness referred is at the foot of the bill and is to the effect that the merchandise covered by the invoice was transferred, set over and pledged to the defendants in accordance with the agreement between them and Levin, and this was followed by the name of Levin. Levin also testified that " It was a rule " that before charging goods to the defendants he had to have their written order, but that the rule was " not at all times observed."

This evidence warrants the inference that the defendants received and receipted for the goods knowing that they were charged to them, and that they in no manner attempted to repudiate Huebshman's authority or the billing of the goods to them at least until eleven days thereafter, doubtless when Levin was nearing bankruptcy, when they wrote the letter to which reference has been made; that the plaintiff would not have delivered the goods if the defendants had not, through Huebshman, agreed that they might be charged to them and that they would pay therefor as they had done in five other instances where goods were similarly charged to them by the authority of Huebshman without confirmation of the order in writing by either of the defendants. The plaintiff knew that the defendants were under no obligation thus to be charged with the goods purchased by Levin unless one of them consented

thereto in writing, but it also knew that they had waived that provision in five other instances only a few days before and had, without repudiation of the authority of Huebshman or questioning the correctness of the invoices showing that the sales were made to them, paid for the goods so charged by the authority of Huebshman without any written confirmation of the order. The fact that the checks sent in payment were accompanied by " pay statements " showing that the payments were made at the request and for the account of Levin or the Imperial Silk Company did not as matter of law constitute a repudiation of the charge to them. The pay statement is susceptible of the construction that it was sent merely to identify the account and the recitals therein were not necessarily inconsistent with an agreement by them that the goods might be charged to them. The plaintiff knew that they were not making an independent purchase as a speculation for their own account but were merely aiding Levin whose business as factor they were conducting and . doubtless hoped thereby to obtain some benefit. The trial court was, I think, warranted in finding from the evidence that at the time of this particular purchase Huebshman was authorized or the defendants held him out as authorized to consent for them that the goods be billed and charged to them.

The determination of the Appellate Term should, therefore, be affirmed, with costs.

CLARKE, P. J., DOWLING, SMITH and GREENBAUM, JJ., concur.

Determination affirmed, with costs.